## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

ADDIE E. THWEATT,               )
                                )
                Plaintiff,      )
                                )
v.                              )        Civil Action No. 3:20-cv-548–HEH
                                )
RONALD T. RHODES, *et al.*,     )
                                )
                Defendants.     )

### MEMORANDUM OPINION
**(Granting Defendants' Motion to Dismiss
and Motion for Judgment on the Pleadings)**

This matter is before the Court on two Motions: Ronald Rhodes's ("Rhodes")

Motion to Dismiss pursuant to Rule 12(b)(6) (ECF No. 9) and Alvin Jones's ("Jones,"

collectively "Defendants") Motion for Judgment on the Pleadings pursuant to Rule 12(c)

(ECF No. 20). Addie Thweatt ("Thweatt") filed suit against Defendants for malicious

prosecution pursuant to 42 U.S.C. § 1983, and Defendants have asserted qualified

immunity. The parties have submitted memoranda in support of their respective

positions, and the Court heard oral argument on Thursday, December 17, 2020. The

Motions are now ripe for review. For the reasons stated below, the Court will grant

Defendants' Motions.

## I.   BACKGROUND

Thweatt was a bus driver for Prince George County Public Schools ("PGCPS") for

thirty-eight years. (Compl. ¶ 10, ECF No. 1.) While driving a PGCPS bus on May 9,

2018, Thweatt engaged in a verbal altercation with a student. (*Id.*) Thweatt brought the

incident to the attention of Rhodes, the Director of Operations for PGCPS on May 10, 2018. (*Id.* ¶ 12.) On that same day, Rhodes gave Thweatt a letter detailing the incident based upon a video recording of the altercation. (*Id.* ¶¶ 13–14.) Thweatt believes that this letter incorrectly summarizes the altercation. (*Id.* ¶¶ 14, 16.)

As described in the letter, a teenage student entered Thweatt's bus stating that she "will hit her straight in the face." (*Id.* Ex. 1 at 1.) After the student sat down in her seat, Thweatt asked who the student wanted to hit, to which the student responded with, "who do you think?" (*Id.*) Thweatt then left the driver's seat and approached the student in her seat demanding to know if the student was referring to Thweatt. (*Id.*) The student asked if Thweatt thought the student intended to hit Thweatt. (*Id.*) Thweatt answered that the student should "bring it on! You going to hit me in the face? Who you talking to me or who?" (*Id.*) The student inquired if Thweatt was going to drive the bus. (*Id.*) Standing over the seated student, Thweatt told the student that "Naw, you going to tell me who you talking to? I am going to call somebody you can get off the bus!" (*Id.*) The student retorted that she was "getting the fuck off the bus." (*Id.*) Thweatt told the student to get off the bus and the student exited with a final "fuck you then!" (*Id.*)

In addition to corroborating the description in the letter, the video footage depicts Thweatt unbuckling her seatbelt to then stand over the student, throwing up her arms repeatedly during the confrontation, and blocking the student in her seat such that the student had to push past Thweatt to exit the bus. (Rhodes's Mot. to Seal Ex. A, ECF No. 11.)

After Rhodes gave Thweatt the letter, he informed her that she was going to be placed on administrative leave, and that Jones—an officer with the Prince George County Police Department assigned as a Resource Officer to PGCPS—would be pressing charges. (Compl. ¶¶ 13, 14.) Jones then obtained a warrant from a magistrate to arrest Thweatt for disorderly conduct pursuant to Va. Code Ann. § 18.2-415. (*Id.* ¶ 18.) Thweatt claims that Jones only made an oral statement to the magistrate and did not interview the student prior to meeting with the magistrate. (*Id.* ¶¶ 20–21.) Thweatt was ultimately found not guilty of disorderly conduct. (*Id.* ¶¶ 22, 24.)

Thweatt brings a single-count Complaint for malicious prosecution pursuant to § 1983 against Rhodes and Jones. (*Id.* at 5–6.) Thweatt contends that her conduct was merely words, and that Jones did not have probable cause to arrest her for disorderly conduct. (*Id.*) Rhodes and Jones make substantially similar arguments in their respective Motions, and both assert qualified immunity. (Rhodes's Mem. Supp. Mot. to Dismiss at 7, ECF No. 10 [hereinafter "Rhodes's Mem."]; Jones's Mem. Supp. Mot. Dismiss at 5–6, ECF No. 21 [hereinafter "Jones's Mem."].) Both Rhodes and Jones contend that they did not cause Thweatt's arrest because the the magistrate's signature on the warrant is a sufficient intervening cause. (Rhodes's Mem. at 7; Jones's Mem. at 5–6.) Additionally, Defendants both assert that a reasonable officer could find Thweatt's conduct disorderly and in violation of § 18.2-415. (Rhodes's Mem. at 8–9; Jones's Mem. at 8.) However, Thweatt alleges that both Rhodes and Jones made numerous critical misrepresentations such that the magistrate's issuance of the warrant does not break the causal chain and no reasonable officer would have believed her conduct was disorderly. (Opp'n to Rhodes's

3

Mot. to Dismiss at 9–12, ECF No. 16 [hereinafter "Opp'n to Rhodes's Mot."]; Opp'n to

Jones's Mot. to Dismiss at 9–12, ECF No. 29 [hereinafter "Opp'n to Jones's Mot."].)

## II.   STANDARD OF REVIEW

The standard for reviewing a motion for judgment on the pleadings under Federal

Rule of Civil Procedure 12(c) utilizes the same standard as a motion made pursuant to

Rule 12(b)(6). *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th

Cir. 2002); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "In

reviewing a motion to dismiss for failure to state a claim, [a court] must 'accept as true all

of the factual allegations contained in the complaint and draw all reasonable inferences in

favor of the plaintiff.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *King v.

Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)). A Rule 12(b)(6) motion "does not

resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."

*Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v.

Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). "A complaint need only 'give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray*, 948 F.3d

at 226 (alteration in original) (quoting *Tobey,* 706 F.3d at 387). However, a "complaint

must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face.'" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Allegations have facial plausibility 'when

the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged.'" *Tobey*, 706 F.3d at 386 (quoting

*Iqbal*, 556 U.S. at 679). A court, however, "need not accept legal conclusions couched as

4

facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner*, 930 F.3d at 644 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

Generally, the district court does not consider extrinsic materials when evaluating a complaint under Rule 12(b)(6). The court, however, may consider "documents incorporated into the complaint by reference," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), in addition to documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (alteration in original) (quoting *Fayetteville Inv'rs v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)). This is based on "the presumption that the plaintiff, by basing his claim on the attached document, has adopted as true the contents of that document." *Id.* at 167. However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it," and it should consider whether plaintiff relied on the attachment for its truthfulness. *See id.* at 167–69; *see also Wallace v. Baylouny*, No. 1:16-cv-47, 2016 WL 3059996, at *4 (E.D. Va. May 31, 2016).

## III.   DISCUSSION

Two extrinsic materials are incorporated into the Complaint by reference: the video recording of the altercation and the letter Rhodes wrote to Thweatt about the incident. The video is attached as Exhibit A to Rhodes's Motion to Seal accompanying

5

Rhodes's Motion to Dismiss, and the letter is attached as Exhibit 1 to the Complaint. Thweatt refers to the "bus film" three times in her Complaint (Compl. ¶¶ 14, 24, 36), and throughout her oppositional briefing. (*E.g.*, Opp'n to Jones's Mot. at 13; Opp'n to Rhodes's Mot. at 15.) Although Thweatt attaches the letter to the Complaint and references it on several occasions, she also states that she believes the letter is an incorrect description of the incident and the video. (Compl. ¶¶ 16, 36.) Thweatt does not rely on the attachment for its truthfulness, but the letter is not an inaccurate summary of the video. (*Compare id.* Ex. 1, at 1 *with* Rhodes's Motion to Seal Ex. A.) Thus, the Court may properly consider both materials as incorporated into the Complaint.

The principal question for the Court is whether Defendants are entitled to qualified immunity. The Supreme Court of United States has continually advised trial courts that qualified immunity should be addressed at the earliest stage of the proceedings. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted). The Court has extended qualified immunity to include public school employees. *See, e.g., Safford v. Unified Sch. Dist. #1 v. Redding*, 557 U.S. 364 (2009); *New Jersey v. T.L.O.*, 469 U.S. 325 (1985).

A plaintiff must demonstrate two elements to overcome qualified immunity: first, that the official violated a constitutional right, and second, that this right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A court may begin its analysis with either prong. *Pearson*, 555 U.S. at 236. "If a plaintiff fails to allege that an official has violated any right, . . . 'the analysis ends right then and there.'" *Evans v. Chalmers*, 703 F.3d 636, 646 (4th Cir. 2007) (quoting *Abney v. Coe*, 493 F.3d 412, 415 (4th Cir. 2007)). As the United States Court of Appeals for the Fourth Circuit stressed in

*Torchinsky v. Siwinski*, the qualified immunity test distills to one of objective reasonableness. 942 F.2d 257, 261 (4th Cir. 1991). "This objective test involves an inquiry into whether a government official has violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Thweatt fails to establish that either Rhodes or Jones violated a constitutional right. Thweatt alleges that, pursuant to § 1983, Rhodes and Jones maliciously prosecuted her in violation of her constitutional rights. To state a viable claim under § 1983, a plaintiff must allege that a person acting under the color of state law deprived her of either a constitutional right or a right conferred by a law of the United States. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). "[Section] 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred . . . . The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotations omitted).

The Fourth Circuit has held that a "malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000). A plaintiff must allege "that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans,* 703 F.3d at 647. Thweatt has satisfied the third element—she was found not guilty of the disorderly conduct

7

charge. (Compl. ¶ 24.)  Even so, Thweatt has not plausibly demonstrated that Defendants caused her seizure or that her arrest lacked probable cause.

For a defendant to cause a plaintiff's seizure, the plaintiff must show "both but-for and proximate causation." *Evans*, 703 F.3d at 647.  Action taken by an independent decision maker, such as a magistrate judge, "may constitute [an] intervening superseding cause[] that break[s] the causal chain" and shields an officer from liability. *Id.*  However, if a defendant misled, unduly pressured, or lied to the magistrate in a statement or affidavit, the defendant may still be liable for causing the seizure. *Id.* at 648.  There is a presumption that an affiant to a warrant was truthful unless there is "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978).

As stated in the Complaint, Jones sought an arrest warrant from the magistrate. (Compl. ¶ 18.)  Jones gave an oral statement under oath to the magistrate, after which the magistrate made a determination that there was probable cause and issued the warrant. (*Id.* ¶¶ 18, 21.)  In her oppositional briefing, Thweatt repeatedly alleges that Jones made a misstatement and omitted evidence in his oral presentation to the magistrate such that the magistrate's review did not break the causal chain. (*E.g.*, Opp'n to Jones's Mot. at 5–6.)  Thweatt provides no evidence to substantiate her claim, only stating that "Officer Jones made only a verbal statement to the magistrate judge in obtaining the Warrant." (Compl. ¶ 21.)  The Complaint conspicuously lacks facts that suggest Jones misled, pressured, or lied to the magistrate when seeking the warrant. *See Franks*, 438 U.S. at

155–56. Accordingly, the magistrate's determination of probable cause breaks the causal chain and Jones did not cause Thweatt's arrest. *See Evans*, 703 F.3d at 647–48.

Thweatt alleges that Jones acted at the direction of Rhodes. (Opp'n to Rhodes's Mot. at 10.) The sole support for this contention in the Complaint is a conclusory statement that "Jones, at the direction of Rhodes, instituted criminal proceedings against [her]." (Compl. ¶ 29.) Although Thweatt maintains that "Rhodes told her that Officer Jones was going to press charges" and that "Officer Jones sought a [w]arrant," these statements alone are insufficient to buttress Thweatt's allegation. (*Id.* ¶ 18.) There is simply no evidence in the Complaint for her claims that Rhodes caused Jones to get a warrant. Additionally, Thweatt claims that Rhodes lied to Jones, but the only factual support in the Complaint for this claim is that the letter Rhodes drafted and gave to Thweatt "purported to summarize the Incident, allegedly based on a review of the bus film" (*Id.* ¶ 14) and that it "did not fully and accurately reflect the events." (*Id.* ¶ 16.) This allegation is insufficient to show that Rhodes made a misstatement or lied to Jones. Thus, there are no plausible facts demonstrating that Rhodes caused Thweatt to be seized.

Additionally, a reasonable officer could find that there was probable cause to arrest Thweatt. In relevant part, the Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. "Probable cause . . . is not a high bar: [i]t requires only the 'kind of "fair probability" on which "reasonable and prudent [people,] not legal technicians, act.""" *Kaley v. United States*, 571 U.S. 320, 338 (2014) (quoting

9

*Florida v. Harris*, 568 U.S. 237, 244 (2014) (quoting *Illinois v. Gates*, 462 U.S. 213, 231,

238 (1983))).  Probable cause is "a fluid concept" that is "not readily, or even usefully,

reduced to a neat set of legal rules." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 586

(2018).  An officer has probable cause when, considering the totality of the

circumstances, a reasonable person would believe that the arrestee committed or was

committing a crime. *Id.*; *see also Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996).

"While probable cause requires more than 'bare suspicion,' it requires less than that

evidence necessary to convict." *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998).

Thweatt was charged with a violation of disorderly conduct as codified in § 18.2-

415, which reads:

> A person is guilty of disorderly conduct if, with the intent to cause
> public inconvenience, annoyance, or alarm, or recklessly creating a risk
> thereof . . . [w]illfully . . . disrupts the operation of any school or activity
> conducted or sponsored by the school, if the disruption has a direct
> tendency to cause acts of violence by the person . . . at whom . . . the
> disruption is directed.

"[T]he question as to whether a particular act is disorderly conduct depends largely on the

facts of the particular case, . . . [including] not only the nature of the particular act but

also the time and place of its occurrence as well as all the surrounding circumstances."

*Collins v. City of Norfolk*, 41 S.E.2d 448, 450 (Va. 1947).  An act would cause violence if

"the conduct in question 'would cause a reasonable [person] to respond with physical

force or violence.'" *Williams v. Commonwealth*, No. 0127-02-1, 2002 WL 31553084, *2

(Va. Ct. App. Nov. 19, 2002) (citing *Ford v. City of Newport News*, 474 S.E.2d 848, 851

(Va. Ct. App. 1996)).  "Whether the conduct was directed at a citizen or a law

enforcement officer is also a relevant factor." *Davis v. Commonwealth*, No. 2638-03-2, 2004 WL 3391873, *2 (Va. Ct. App. Oct. 12, 2004).

Under the First Amendment, a law cannot "abridg[e] the freedom of speech." U.S. CONST. amend. I.  The right to freedom of speech, however, is not absolute.  The Supreme Court has stated that "[t]here are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72 (1942).  In *Chaplinsky*, the Court held that "'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace" are not protected under the First Amendment. *Id.*

Because she believes that she did not act in a way that would cause an act of violence, Thweatt argues that she cannot be arrested for disorderly conduct solely based upon the words she uttered; they were not fighting words and are therefore protected under the First Amendment. (*E.g.*, Opp'n to Rhodes's Mot. at 12–14.)  Defendants contend that there was probable cause because her acts alone could have provoked a violent response. (Rhodes's Mem. at 8–9; Jones's Mem. at 8.)  The Court agrees with Thweatt—the words she uttered were not sufficiently provocative on their own to, "by their very utterance[,] inflict injury." *See Chaplinsky*, 315 U.S. at 571–72.  However, Thweatt's actions, not her words, create probable cause for disorderly conduct.  Thweatt unbuckled her seatbelt, rose out of her seat, and approached a young teenage girl. (Rhodes's Mot. to Seal Ex. A.)  Not only was Thweatt loudly shouting and waving her

11

arms, but she also leaned over the student in front of the student's seat and blocked the student's exit, with the student pushing past her to leave. (*Id.*)

To support her argument that this conduct is insufficient to cause a reasonable person to respond with physical force or violence, Thweatt relies on *Ford*. In *Ford*, the Virginia Court of Appeals held that there was not probable cause for an arrest.[1] *Ford*, 474 S.E.2d at 851. A police officer approached a man, who was pushing a bicycle in a high crime area at around 9:00 p.m. *Id.* at 850. When the officer began to question the man, he waved his arms in the air and generally was "loud, angry and uncooperative" such that persons living in a nearby apartment building offered the officer assistance. *Id.* The court reasoned that the man's conduct was insufficient to "cause a reasonable officer to respond with physical force or violence." *Id.* at 851.

In this case, however, there is ample evidence to support probable cause for disorderly conduct. *Ford* notably involved a police officer's encounter with a loud and angry man. *See id.* By contrast, the interaction here is between a school employee and a minor child, not a police officer. *See id*; *Davis*, 2004 WL 3391873, at *2. The student had to exert some physical force to exit the situation, and, although the student did not

---

[1] *Ford* involves a Newport News ordinance that is substantially similar to § 18.2-415. The ordinance reads as follows:

> A person is guilty of disorderly conduct and a Class 1 misdemeanor if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person . . . engages in conduct having a direct tendency to cause acts of violence by the person or persons at whom, individually, such conduct is directed; . . . [such conduct] shall not be deemed to include the utterance or display of any words.

Newport News Code § 28-11(a).

react violently, a reasonable person may very well have due to Thweatt blocking the exit

to the bus. *See Williams*, 2002 WL 31553084, at *2. As the magistrate would have had

to find that a reasonable person may have reacted violently to issue the warrant, there was

probable cause to arrest her for disorderly conduct. Therefore, Thweatt cannot establish

the second element of a malicious prosecution claim.

## IV.  CONCLUSION

Thweatt has failed to state a plausible claim for malicious prosecution, and thus,

fails to allege a constitutional violation to support a § 1983 claim. Accordingly, the

Court need not address whether the constitutional right was clearly established. *See, e.g.,*

*Evans*, 703 F.3d. at 646. Because Defendants are entitled to qualified immunity, the

Court will grant the Motion for Judgment on the Pleadings and the Motion to Dismiss.

An appropriate Order will accompany this Memorandum Opinion.

/s/
_____
Henry E. Hudson
Senior United States District Judge

Date: **Feb 4 2021**
Richmond, Virginia

13